## KREBS PIGMENT & CHEMICAL CO. v. SHERIDAN.

### No. 169.

District Court, E. D. Pennsylvania.

June 5, 1934.

Rawle & Henderson, of Philadelphia, Pa., for libelant.

Shields, Clark, Brown & McCown, of Philadelphia, Pa., for respondent.

DICKINSON, District Judge.

The respondents should have judgment in their favor.

### Discussion.

■ It is helpful to have in mind the doctrines of the law maritime in the light of which the fact situation presented should be viewed. The Charter Party contract is one of carriage. In all jurisdictions an action for damages for failure to perform is based on a finding of negligence. Nonperformance will support such finding. This is because in the ordinary course, in the absence of negligence, a safe carriage is had. The fact inference is in consequence justified that failure was due to negligence. There is likewise a rule of policy which may be invoked. The carrier knows the circumstances of the loss; neither the shipper nor consignee has the means of knowledge. It is thus just that the carrier should account for the loss. The principle of respondeat superior also applies. The actual work of carriage may be done by the contract carrier through others whose negligence is imputed to the carrier. The Harter Act (46 USCA §§ 190–195), when applicable, modifies this. The carrying vessel and its owners are exculpated from this imputed negligence upon condition. The Harter Act admittedly has here no application. The controlling question thus becomes whether the carrier has overcome the inferred negligence by evidence which calls for the finding that the loss of the cargo in this instance was due to a cause for which the carrier was not responsible. This takes us to the facts.

### The Fact Situation.

The loss occurred in a pier slip. A ship was discharging into barges, one of which was the Mack belonging to the respondent carrier. The unloading of the ship and the loading of the barge was being done by means of a hoister vessel. The order of arrangement was the ship being unloaded; the hoister alongside the ship and the barge being loaded alongside the hoister. The cargo was barytes ore. The discharging of the ship and the loading of the barge was being done by an independent contractor. The respondent barge, after having been loaded, filled, capsized and sank, the cargo being lost.

### Findings.

■ The contract of carriage was made July 14, 1925. The trial hearing began April 13, 1934. To determine the true incidents of a happening nearly nine years after it occurred is difficult. The causa causans of the loss of cargo was the filling of the barge. What caused this? Respondents have expended much time and effort in introducing evidence of the seaworthiness of the barge. Seaworthiness is an ultimate fact inference. The fact of repairs and the extent of them are at most evidentiary facts.

■ This evidence was introduced not because the fact of seaworthiness exculpated the carrier from the charge of negligence, for the Harter Act is not invoked, but because of its bearing upon the fact of whether the carrier was negligent. What is really set up is the

fact that a barge, known to the record as the Weston, had been loaded before the respondent barge. The Weston had in truth been overloaded. In consequence, she was in danger of sinking. When this was discovered, to relieve her, about fifty tons of ore were taken out of the Weston and loaded on the respondent barge. For accomplishing this, the respondent barge was placed between the hoister and the barge Weston. The result was damage to the hull of the barge causing her to fill and sink and the loss of her cargo. This was done by those in charge of the loading and unloading over whom the respondent had no control and for whose acts the respondent was not responsible. This theory of the cause of the loss of the cargo is given confirmation by the admissions of the real libelant. The libel is in form by the owner of the cargo. The owner was, however, insured and the underwriter has been subrogated to its rights. Any recovery is in consequence for the use of the underwriter. The respondent barge was likewise insured by the same underwriter. The loss was paid. This was an admission that the barge was seaworthy. The underwriter has further brought its action against the hoister for its negligence in having caused the loss of the respondent barge and its cargo in which the underwriter avers the very state of facts upon which the respondents here rely. The real libelant in this cause cannot thus complain of a finding of the very fact which it has itself averred.

The fact finding is made that the loss of the cargo in suit was not due to any act of negligence of the respondents and the conclusion of law follows that the respondents are not responsible for the loss.

We see no need to make specific findings of evidentiary facts, but if the parties desire such findings to be made, either may submit requests for findings of fact and conclusions of law which we will answer and incorporate herewith.

A decree dismissing the libel, with costs, may be submitted.

■ Since writing the foregoing opinion, we have received the Supplemental Paper Book of the respondents. The ruling made was based upon respondent's admission that the Harter Act had no application in the instant case. As has often been stated, a carrier is not an insurer. The standard of care required of it is, however, so high and the burden usually imposed of disproving negligence works the practical result that its obligation is little short of insurance. None the less, the basis of liability is negligence. When the work of the carrier is performed for it by others, the doctrine of respondeat superior applies and the negligence of the agent is imputed to the principal. It is just here that the Harter Act has its application. The carrier is relieved of liability for this imputed negligence, but only upon conditions. The question then becomes whether the carrier has met these conditions, one of which is the seaworthiness of the carrier vessel. Independently of the Harter Act, the failure to safely carry would, nothing else appearing, justify the inference of negligence. The filling and sinking of a vessel in a protected slip would, nothing else appearing, call for the inference of unseaworthiness. In either case, if the filling was due to some outside agency, it could not be said to have been due to the unseaworthiness of the vessel or the negligence of the carrier. The Harter Act has in consequence no practical bearing. If the filling of the Mack was due to some outside agency, Harter Act or no Harter Act, neither the vessel nor her owners would be answerable for the loss of her cargo. If she sank without any outside agency having caused her to sink, it would be idle to say she was seaworthy. It would be likewise idle to deny the responsibility of the carrier. The controlling question thus becomes whether the filling was due to an outside cause.